IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Criminal Action No. 12-cr-00010-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.   GEORGE H. ASKEW,
2.   ROMELL E. BULLOCK,
3.   GREGORY A. COLLINS,
4.   **GEORGE A. GADDY,**
5.   DELBERT J. GARDNER,
6.   RICHARD W. JOHNSON,
7.   SHEPS H. KHAMSAHU,
8.   ERIC LUGO,
10.  JOHNIE A. MYERS,
11.  DARRELL R. PARKER,
12.  CALVIN R. RILEY,
13.  COREY L. RILEY,
14.  THOMAS A. SCHRAH, JR.,
15.  JAMES R. SWITZER,
16.  CLIFFORD M. WRIGHT,

    Defendants.

---

**MEMORANDUM AND OPINION DETERMINING COMPETENCY**

---

    **THIS MATTER** is before the Court for a determination as to the Defendant George A. Gaddy's competency to be tried.

### I. Background

    Pursuant to 18 U.S.C. § 4241, the Court granted Mr. Gaddy's Motion for Determination of Mental Competency **(#637)** and request for a psychological examination. Per Mr. Gaddy's request, and without opposition by the Government, the Court ordered **(#666)** that he undergo an

examination with Birgit Fisher, Ph.D.  Thereafter, Dr. Fisher's completed examination report **(#746)** was filed with the Court.

Later, the Government requested **(#763)** that Mr. Gaddy undergo a second psychological evaluation with a different doctor.  For reasons stated on the record, the Court granted **(#806)** the Government's motion and ordered that Mr. Gaddy undergo a second evaluation with Susan Bograd, M.D.  Dr. Bograd's report **(#843)** was also filed with the Court.

After the examinations were complete, the Court set an evidentiary hearing on the matter.  However, the parties jointly moved **(#872)** to vacate the hearing and requested that the Court determine Mr. Gaddy's competency on the pleadings and reports.  That motion was granted **(#873)**.  Having reviewed the pleading and reports, the Court now makes the following determination.

## II.  Discussion

### A.  Dr. Fisher's Report

Dr. Fisher is a licensed clinical psychologist.  Her evaluation of Mr. Gaddy's competency was made, in part, on a clinical interview and assessment of him.  During her interview, Dr. Fisher observed that Mr. Gaddy's "insight into his current legal situation was limited as he appeared confused about the charges, plea offers and nature of the legal proceedings."  She observed that Mr. Gaddy was confused about the marijuana charges against him and could not understand the difference between state and federal laws.  She noted that he became frustrated when evaluating his understanding of his options, such as accepting a plea or going to trial.  He stated, "It is my right to go to trial if I did something but I didn't."  Dr. Fisher noted that Mr. Gaddy understood that he could be found guilty if he went to trial, and if that happened, he

believed "[he] would lose everything."  She further noted that Mr. Gaddy performed below average on cognitive tests, the results of which were likely impacted by symptoms of depression.

Overall, Dr. Fisher noted that Mr. Gaddy's comments and test results showed his "inability to understand and rationally evaluate information presented to him pertaining to the nature and potential consequences of the proceedings against him."  She opined that, "[g]iven his level of mental inflexibility, intellectual limitations and cognitive deficits, it is unlikely that he will be able to gain a reasonable understanding of these proceedings, even if ongoing coaching is provided."  She further opined that Mr. Gaddy's ability to cooperate rationally with his attorney "yielded concerns" because he expressed distrust and an unwillingness to follow his attorney's recommendations.  She observed that Mr. Gaddy was "unable to outline a strategy he thought plausible in resolving the current matter."

Dr. Fisher concluded that Mr. Gaddy's suffers from cognitive deficits that are exacerbated by anxiety, depression, and chronic liver disease.  Because of these deficits, Dr. Fisher found that Mr. Gaddy approaches problems in a concrete and inflexible manner, he struggles to process complex information, and it is difficult for him to evaluate information effectively and identify viable solutions.  Dr. Fisher concluded that Mr. Gaddy's cognitive deficits, combined with symptoms of post-traumatic stress disorder, contribute to his difficulty in "understanding the nature and consequences of the proceedings against him" and "prevent him from assisting properly in his defense."  Dr. Fisher noted that "[w]hile personality factors likely contribute to these dynamics as well, it appears that Mr. Gaddy's current behavior is not volitional but driven by cognitive deficits and symptoms of PTSD, depression and anxiety."

B.  Dr. Bograd's Report

Dr. Bograd, MD is a psychiatrist.  She also conducted an extensive interview with Mr. Gaddy.  Dr. Bograd made several observations the interview.  Dr. Bograd reported that Mr. Gaddy understood that accepting a plea bargain involves pleading guilty and that pleading not guilty would lead to his case going to trial.  Dr. Bograd observed that Mr. Gaddy demonstrated an understanding of the plea bargain offered to him, but he reiterated, "I am not pleading guilty to something I did not do."  Dr. Bograd reported that Mr. Gaddy understood the constitutional rights he has a criminal defendant, such as the right to plead not guilty and go to trial and the right to refrain from self-incrimination.  He demonstrated an understanding that an individual may choose to give up those rights by pleading guilty and accepting a plea bargain.  However, Mr. Gaddy again told Dr. Bograd that if he would "take the deal" if he thought he had done something.  Nevertheless, Dr. Bograd observed that Mr. Gaddy "clearly wants to do what is in his best interest."  She noted that he is "willing to consider a plea agreement," and that he "is very clear about what kind of plea agreement he would like to be offered."  Dr. Bograd noted that Mr. Gaddy discussed the concept of "a jury of his peers," and that he was able to understand that the concept of pleading not guilty by reason of insanity did not apply to him.

Mr. Gaddy informed Dr. Bograd that there was already one felony on his record, and he described to her the impact of being convicted of a second felony.  He was able to describe to Dr. Bograd, in general terms, the concept of being a habitual criminal.  He told her that "he did not want another felony on his record because if there was ever a third felony for any reason, the ramifications would be quite significant."  Mr. Gaddy expressed to Dr. Bograd that medical marijuana use is illegal under federal law, but that it is okay under state law.  He admits that he obtained a medical marijuana card because "[t]hat's the right way to do it."

4

Dr. Bograd observed that Mr. Gaddy understands the roles of various officers of the Court.  He described his attorney's job as "[finding] out what is going on and [showing] me the evidence against me so we can prove them wrong."  However, he expressed dissatisfaction with his current attorney, and Dr. Bograd opined that he holds an unrealistic expectation that his attorney should be able to get his case dismissed.  But, this expectation is not the result of a mental disease or defect.  Rather, Dr. Bograd opined that the difficulties in working with Mr. Gaddy are rooted in his personality style and traits.

 Dr. Bograd noted that Mr. Gaddy views the charges against him as "bogus and petty" and that the Government is "giving him a hard time."  She noted that he believes that the prosecution is unfair and unjust and that the Government should leave him alone.  But, Dr. Bograd concluded that "[t]hese viewpoints are not the product of a mental disease of defect." She noted that even if she accepted Mr. Gaddy's diagnosis of post-traumatic stress disorder was accurate, the symptoms he experiences do not render him incompetent to proceed. Dr. Bograd opined that Mr. Gaddy demonstrated a "present ability to understand the nature and consequences of the proceedings against him" and a "present ability to assist property in his defense," and that although he is difficult to work with, the reason for this is "characterologic" or "personality in nature and not due to mental disease or defect."  Dr. Bograd concluded that Mr. Gaddy is competent to proceed.

## C.  Analysis

Competency to stand trial is a factual determination.  *See United States v. Crews*, 781 F.2d 826, 833 (10th Cir. 1986) (per curiam).  In order for a defendant to be competent to stand trial, he must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and also a "rational as well as factual understanding of the

5

proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). Under 18 U.S.C. § 4241, if the Court finds by a preponderance of the evidence that a defendant is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," the Court shall commit him to the custody of the Attorney General for such reasonable amount of time so as to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to proceed. When determining competency, "the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment." *U.S. v. Boigegrain*, 155 F.3d 1181, 1189 (10th Cir. 1998) (quoting *U.S. v. Nichols*, 56 F.3d 403, 411 (2d Cir. 1995)).

Having reviewed the pertinent pleadings, the record, and the reports of both Dr. Fisher and Dr. Bograd, the Court finds that Mr. Gaddy is competent to enter a plea or to proceed to trial.[1] The observations and opinions of Dr. Bograd support this finding. It is clear that Mr. Gaddy understands the nature of the charges against him and the difference between a felony and misdemeanor. He understands the difference between accepting a plea offer and going to trial, and he understands what consequences may flow from choosing one or the other. Mr. Gaddy understands various legal concepts, such as the relevance of evidence, a jury made up of his peers, and pleading not guilty by reason of insanity. He understands that he would be giving up certain constitutional rights if he pled guilty, and he understands the role of the Court, witnesses, the jury, and counsel. In light of these observations, the Court finds that Mr. Gaddy has a rational and factual understanding of the proceedings against him. Further, the Court finds that

---

[1] The Court is aware that Mr. Gaddy has filed a Notice of Disposition **(#871)**, contingent upon a finding of competency, and it notes that this competency determination applies equally to Mr. Gaddy's competency to plead guilty. *See Godinez v. Moran*, 509 U.S. 389, 398 (1993) (tests for competency to stand trial and competency to plead guilty are the same).

although Mr. Gaddy may be a difficult client to work with, he has sufficient present ability to consult with his attorney and to assist in his defense.

The Court recognizes that Dr. Fisher reached an opposite conclusion. However, the Court does not find Dr. Fisher's report persuasive for the following reasons. First, it does not appear that Dr. Fisher understood or consistently applied the proper legal standard. For example, although Dr. Fisher concludes that Mr. Gaddy is unable to understand the proceedings against him, some of her observations actually support the opposite conclusion. Mr. Gaddy's comments indicate that he understands that there is a difference between a felony and a misdemeanor, and that he understands the difference between accepting a plea and going to trial. They also indicate that he understands that he could be found guilty at trial, and that the consequences of being found guilty are serious. Next, Dr. Fisher noted that Mr. Gaddy's performance on cognitive functioning tests was impacted by symptoms of depression. Yet, that observation was not accounted for with regard to the opinions she rendered. It is therefore unclear to what degree Dr. Fisher believes that some aspects of Mr. Gaddy's abilities to process information are affected by his depression, and whether that could be addressed so as to "restore" him to competence.

### III.  Conclusion

For the forgoing reasons, the Court concludes that the Defendant George A. Gaddy is competent to proceed to trial or to plead guilty. In light of this determination, the Government's Motion for Expedited Ruling Regarding Joint Motion to Determine Competency Based Upon the Pleadings and Reports **(#894)** is **DENIED AS MOOT**. By June 30, 2013, the parties will contact chambers either to set a hearing pursuant to Fed. R. Crim. P. 11 or to set a trial date.

Dated this 24th day of June, 2013.

                                        **BY THE COURT:**

                                        */s/ Marcia S. Krieger*

                                        Marcia S. Krieger  
                                        Chief United States District Judge